AO 472 (Rev. 05/05) Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT
## Eastern District of Michigan

| | |
|---|---|
| UNITED STATES OF AMERICA<br>V.<br>_____NATHANIEL PEMBROOK_____<br>*Defendant* | **ORDER OF DETENTION PENDING TRIAL**<br>Case Number: 14-20525 |

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held. I conclude that the following facts require the detention of the defendant pending trial in this case.

### Part I—Findings of Fact

☐ (1) The defendant is charged with an offense described in 18 U.S.C. § 3142(f)(1) and has been convicted of a ☐ federal offense ☐ state or local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed - that is
  ☐ a crime of violence as defined in 18 U.S.C. § 3156(a)(4).
  ☐ an offense for which the maximum sentence is life imprisonment or death.
  ☐ an offense for which a maximum term of imprisonment of ten years or more is prescribed in
  _____.*
  ☐ a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 U.S.C. § 3142(f)(1)(A)-(C), or comparable state or local offenses.
☐ (2) The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state or local offense.
☐ (3) A period of not more than five years has elapsed since the ☐ date of conviction ☐ release of the defendant from imprisonment for the offense described in finding (1).
☐ (4) Findings Nos. (1), (2) and (3) establish a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of (an) other person(s) and the community. I further find that the defendant has not rebutted this presumption.

### Alternative Findings (A)

☑ (1) There is probable cause to believe that the defendant has committed an offense
  ☐ for which a maximum term of imprisonment of ten years or more is prescribed in _____.
  ☑ under 18 U.S.C. § 924(c).
☑ (2) The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

### Alternative Findings (B)

☐ (1) There is a serious risk that the defendant will not appear.
☐ (2) There is a serious risk that the defendant will endanger the safety of another person or the community.

### Part II—Written Statement of Reasons for Detention

I find that the credible testimony and information submitted at the hearing establishes by ☑ clear and convincing evidence ☑ a preponderance of the evidence that

See attached.

### Part III—Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

| | |
|---|---|
| September 12, 2014 | *[signature]* |
| Date | Signature of Judge |
| | DAVID R. GRAND, U.S. MAGISTRATE JUDGE |
| | Name and Title of Judge |

*Insert as applicable: (a) Controlled Substances Act (21 U.S.C. § 801 *et seq.*); (b) Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*); or (c) Section 1 of Act of Sept. 15, 1980 (21 U.S.C. § 955a).

14-20525; *United States of America v. Nathaniel Pembrook*

   On July 16, 2014, Nathaniel Pembrook was charged in a criminal complaint with violating 18 U.S.C. § 1951 (Conspiracy to Commit the Crime of Interference with Commerce by Robbery) and 18 U.S.C. § 924(c) (Conspiracy to Use and to Use and Carry a Firearm During and in Relation to a Crime of Violence).[1] The complaint is supported by the affidavit of Brian Max, an FBI Special Agent. Agent Max's affidavit describes two jewelry robberies that Pembrook was allegedly involved in. On April 22, 2014, at approximately 12:30 p.m., four males entered a Grand Rapids, Michigan jewelry store with their faces covered. One brandished a handgun and forced employees and customers into a room where a safe was located. Another entered an employee lounge area, armed with a gun. Waiting there were the jewelry store owners, armed themselves with firearms. When the robber entered the lounge the owners shot at him, hitting him in the arm. The robbers all immediately fled, but the suspect who had been shot left a trail of blood. A Michigan State Police lab tested blood recovered from the scene (and from the area where the robbers fled to after leaving the store), and it matched DNA previously obtained from Pembrook.

   A few hours after the botched Grand Rapids robbery, at approximately 5:13 p.m. on April 22nd, a jewelry store in West Bloomfield, Michigan was robbed at gunpoint by three assailants. Video from the two robberies makes clear that the assailants were also involved in the Grand Rapids robbery. The video also seemed to suggest that a fourth accomplice was waiting in a getaway car for the other three who had entered the jewelry store.

   The FBI learned that on April 23, 2014, at approximately 4:00 a.m., Pembrook (who resides in Philadelphia) checked into a Philadelphia, Pennsylvania hospital to receive medical care for a gunshot wound he had suffered to his arm. He told a detective who questioned him that he was shot outside a "speakeasy," but the detective could not locate it. The bullet removed from Pembrook's arm generally matched the type of bullets the Grand Rapids store owners had used when they fired at the robber.

   Pembrook was arrested in the Eastern District of Pennsylvania on August 15, 2014, and he stipulated to detention pending removal. A detention hearing was held before the undersigned on September 11, 2014. The government proffered the above facts, as well as Pembrook's criminal history, which will be discussed below. Pembrook argued that the timing of the West Bloomfield robbery (approximately 5:13 p.m. on April 22, 2014) and the time of his admission to a Philadelphia hospital (approximately 4:00 a.m. on April 23, 2014), suggests that he could not have been involved with that particular robbery. Pembrook also argued that conditions of release could assure the community's safety and his appearance in court.

---

[1] Pembrook has since been indicted by the grand jury, charged with two counts of violating (and aiding and abetting) 18 U.S.C. § 1951(a), two counts of violating 18 U.S.C. § 924(c) (and aiding and abetting), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (and aiding and abetting).

### Applicable Standards and Analysis

In general, "[t]he default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Pursuant to "the Bail Reform Act, 18 U.S.C. § 3142 . . . a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" *Id.* (quoting 18 U.S.C. § 3142(e)). However, where probable cause exists that the defendant violated certain laws, including a law Pembrook is accused of violating – 18 U.S.C. § 924(c) – "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community…" 18 U.S.C. § 3142(e)(3); (e)(3)(B). The presumption is not determinative. As the Sixth Circuit explained in *Stone*:

> As our sister circuits have found, section 3142(e)(3)'s presumption in favor of detention imposes only a "burden of production" on the defendant, and the government retains the "burden of persuasion." *See, e.g., United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985). A defendant satisfies his burden of production when he "com[es] forward with evidence that he does not pose a danger to the community or a risk of flight." *Mercedes*, 254 F.3d at 436. Although a defendant's burden of production "is not heavy," he must introduce at least some evidence. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir.1991); see also *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir.1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption.").

> Even when a defendant satisfies his burden of production, however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Mercedes*, 254 F.3d at 436. The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), abrogated on other grounds by *United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990), ("Congress intended magistrates and judges, who typically focus only upon the particular cases before them, to take account of the more general facts that Congress found"); see also *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir.1986) ("[T]he presumption of dangerousness ... represents

3

> Congressional findings that certain offenders ... are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions."). To rebut the presumption, therefore, a defendant should "present all the special features of his case" that take it outside "the congressional paradigm [.]" *Jessup*, 757 F.2d at 387.
>
> Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community.

*Stone*, 608 U.S. at 945-946. "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." *U.S. v. Hinton*, 113 Fed. Appx. 76, 77 (6th Cir. 2004) (citing *U.S. v. Cisneros*, 328 F.3d 610, 616 (10th Cir.2003)); *U.S. v. Ellison*, 2007 WL 106572, at *2 (E.D. Mich., Jan. 8, 2007).

Here, because Pembrook has been indicted, probable cause exists that he committed the crimes for which he is charged in this case. *Stone*, 608 F.3d at 945 ("A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged. Thus, when the government presents an indictment including charges listed in section 3142(e)(3), it has fulfilled its burden to establish the presumption in favor of detention.") (citations omitted). Accordingly, the rebuttable presumption that detention is appropriate applies to Pembrook. After having carefully considered the evidence and arguments, the Court finds that Pembrook has not rebutted that presumption. Moreover, even if no such presumption applies, the Court finds that the government has satisfied its burden with respect to Pembrook's dangerousness to the community and flight risk.

The Court first considers the nature and circumstances of the charges against Pembrook, including whether they involve certain enumerated offenses, including crimes of violence, and firearms. 18 U.S.C. §3142(g)(1). Here, the charges against Pembrook – Interference with Commerce by Robbery and Possession of a Firearm in Furtherance of a Crime of Violence (and being a Felon in Possession) – clearly are such offenses. Thus, this factor favors detention.

The second factor the court must consider is the weight of the evidence. 18 U.S.C. §3142(g)(2). "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). The weight of the evidence of Pembrook's dangerousness to the community is strong. In addition to having a violent criminal past (having been convicted of aggravated assault and recklessly endangering another person), the weight of the evidence is extremely strong that Pembrook attempted to rob the Grand Rapids jeweler at gunpoint – a very violent and dangerous act. The owners shot a robber who had brandished a gun, and the gunman assailant left a trail of

blood as he fled. DNA from that blood matched Pembrook's DNA that had been collected previously. Less than 24 hours later, Pembrook sought treatment in a Philadelphia hospital for a gunshot wound.[2] Clearly, this factor weighs in favor of detention.

The third factor the Court must consider is "the history and characteristics of the person" accused. 18 U.S.C. §3142(g)(3). This factor also favors detention. For the above reasons, the Court has serious questions about Pembrook's character. Although he has some family ties in the Philadelphia area, they are far outweighed by other matters the Court is to consider, such as Pembrook's extensive criminal history (which include some convictions for violent crimes), his use of illegal drugs, and lack of verifiable employment.

Finally, the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by [Pembrook's] release." 18 U.S.C. §3142(g)(4). Pembrook's alleged conduct in this matter is extremely violent and dangerous, and could easily have resulted in serious injury or death to innocent victims. Pembrook would pose an unreasonable danger to the community if he were to be released on a bond. Accordingly, this factor also favors detention.

In sum, taking all of the evidence and arguments into account, the Court finds, by clear and convincing evidence, that no condition or combination of conditions of Pembrook's release can reasonably assure the community's safety.

Finally, Pembrook is facing significant mandatory minimum jail sentences if he is convicted, which gives him significant incentive to flee. Although he has some ties to Philadelphia, his girlfriend indicated that Pembrook "was never around," and she was unable to provide his residential history. Finally, the criminal complaint states that the robbers of the West Bloomfield jeweler made off with approximately $1,400,000 worth of Rolex watches. Thus, Pembrook could easily have significant funds available to him which he could use to flee prosecution. For all of these reasons, the Court finds, by a preponderance of the evidence, that no condition or combination of conditions of Pembrook's release could reasonably assure his appearance in court.

**Accordingly, Detention is Ordered.**

---

[2] The Court rejects Pembrook's argument that the timing of the West Bloomfield robbery, 5:13 p.m. on April 22nd, and his checking into the Philadelphia hospital at about 4:00 a.m. on April 23rd, makes it unlikely that he was involved in that robbery, which was the only one which took place within this district. Mapquest.com shows that the approximate travel time between West Bloomfield, Michigan and Philadelphia, Pennsylvania (about 600 miles) is between 9.5 and 10.0 hours. Even traveling at posted speeds, there was more than enough time for Pembrook to get to the Philadelphia hospital by 4:00 a.m. on April 23rd.